## GEORGE ADAMS *vs.* JOSEPH NICKERSON.

The plaintiff and defendant each had claims against C., who lived abroad. C.'s agent here delivered to the defendant a draft for more than enough to satisfy his claim, taking back a written agreement for the repayment of the excess after the draft was cashed, and the excess was accordingly so paid. Before the defendant received the draft, a third person informed him that the plaintiff had written to C. to transmit to the defendant money sufficient to pay both their claims. The plaintiff offered evidence that he did so write to C., and that C. sent money to his agent here, requesting him by letter to pay it to the defendant to cancel the plaintiff's claim. There was no evidence that the defendant was informed of this. After evidence of demand and refusal, *Held* that an action for money had and received to the plaintiff's use could not be sustained.

CONTRACT for money received of George Billings to the plaintiff's use. At the trial in the superior court, the plaintiff offered evidence to show that he held a note against William M. Kelley of Tahita, of $872.79, which he afterwards indorsed to William Lang, who negotiated it to the defendant; that, shortly after it became due, the bulk of it was paid, and, as to the balance, the

plaintiff called George Billings as a witness, who testified that, a few months afterwards, he received a draft from Kelley and paid the same, as Kelley's agent, to Joseph Nickerson & Co., and at the same time wrote the following receipt, which the defendant signed : " Boston, March 16 1858. Received of George Billings William H. Kelley's draft for $136.18, as per copy above ; the proceeds of same, collected in cash, to b appropriated to the payment of the balance due on a note of William H. Kelley, in favor of George Adams, now in our possession ; any excess of this draft over the balance due on the note to be paid over to George Billings or order, as soon as possible after a cashment. Joseph Nickerson. Paid me the balance due of $17.12, April 14 1858. G. B." Billings testified that he received the balance of the defendant, according to the memorandum at the bottom of the receipt.

The plaintiff also introduced evidence that Lang informed the defendant, before the receipt of the draft, that the plaintiff had written to Kelley requesting him to transmit to the defendant the balance due on the note, and also the amount of a claim of about $50 held by the plaintiff against him. The plaintiff offered to show that he wrote to Kelley, requesting him to transmit the above sums to the defendant ; but *Putnam,* J. excluded the evidence, unless the defendant should first show that the defendant had knowledge of the letter. The plaintiff then offered to prove that Kelley, in his letter of instructions to his agent Billings, at the time of sending the draft, requested him to pay the amount to Nickerson & Co. to cancel the plaintiff's account with Kelley ; but, Billings having testified that he had no recollection of showing the letter, or stating its contents, to the defendant, the evidence was excluded.

The plaintiff contended that the defendant retained a greater sum from the proceeds of the draft than the balance due to him upon the note, and that he was liable to pay the whole excess over the sum so due to him to the plaintiff, to apply in payment of the plaintiff's claim against Kelley, and he introduced evidence of a demand therefor upon the defendant, and a refusal by him to pay any sum.

Upon the whole evidence introduced by the plaintiff, the court ruled that he was not entitled to recover, and a verdict was re turned for the defendant.    The plaintiff alleged exceptions.

*F. W. Sawyer,* for the plaintiff.

*T. H. Russell,* for the defendant.

MERRICK, J.    If Kelley had transmitted his draft with an intention that so much of its proceeds as should be necessary therefor should be received by the defendant in payment of the note of Adams then held by him, and that the balance should be paid to Adams in satisfaction of his claim against Kelley, and this had been known to the defendant, undoubtedly an implication would have arisen from his acceptance of the draft and its proceeds, under such circumstances and with such knowledge, that he did in effect engage and promise to pay the surplus which might remain in his hands, above the amount due to himself, to the plaintiff.    All this is assumed by the plaintiff as a matter of fact proved, or offered to be proved upon the trial, to have been known to the defendant.    But, upon examination of the statements in the bill of exceptions, it is manifest that no evidence to that effect was introduced or tendered by the plaintiff upon the trial.    On the contrary, it appears from the testimony of Billings, a witness produced by him and in his behalf, that the draft was sent by Kelley to Billings, who did not communicate, or remember that he communicated, to the defendant the order or directions of Kelley concerning it; but that he delivered the draft to the defendant, and took from him at the same time a written receipt therefor, including in it a promise to pay to himself whatever excess above the balance due on the note of Adams might, after such application of part of the proceeds, still remain in his hands; and that, in pursuance of that agreement, the defendant did in fact afterwards pay to him the ascertained amount of that excess.    The dealing of the defendant was solely with the agent of Kelley ; and, as to the balance of the draft above his own claim, he conformed to the terms which the agent, acting under Kelley's authority, prescribed.    It is true that the plaintiff introduced evidence tending to show that Lang informed the defendant, before Kelley's

draft was received, that Adams had written to Kelley request-ing him to transmit to the defendant the amount both of the balance due on the note and on his own claim. But no evidence was produced or offered tending to show that Kelley yielded, or was disposed to yield, to the request; or that the draft was forwarded with any intention to have any portion of its proceeds delivered or paid to the plaintiff.

The evidence offered by the plaintiff to prove the contents of the letters from Adams to Kelley and from Kelley to Billings was properly excluded. The statements contained in them were made by persons who were strangers to the defendant; and it was not suggested that he had any knowledge of those statements until he had paid all the balance of the money in his hands belonging to Kelley over to his agent Billings, who was authorized to receive it. It was mere hearsay, and of course inadmissible.

As there was no evidence in the case on which the jury could, in any aspect of it, have found any indebtedness of Nickerson to the plantiff, or have been warranted in finding a verdict in his behalf, the ruling of the court, that the action could not be maintained, was correct.      *Exceptions overruled.*